UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA SUMPTER, on behalf of herself and all
similarly situated female inmates of the Wayne
County Jail,

    Plaintiff,

v.

COUNTY OF WAYNE; SHERIFF BENNY N.
NAPOLEAN, in his Official Capacity; and
OFFICER TERRY GRAHAM, in her Individual
Capacity, jointly and severally,

    Defendants.

                                              /

Case No. 14-14769

Honorable John Corbett O'Meara

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION TO STRIKE ERRATA SHEET,
AND DENYING WITHOUT PREJUDICE
PLAINTIFF'S AMENDED MOTION TO CERTIFY CLASS**

This matter came before the court on plaintiff Amanda Sumpter's November 5, 2015 amended motion to certify class; Defendants' December 10, 2015 motion for partial summary judgment; and Plaintiff's March 4, 2016 motion to strike errata sheet.

**BACKGROUND FACTS**

Plaintiff Amanda Sumpter filed this suit against defendant Wayne County, its sheriff Benny Napolean in his official capacity, and Corporal Terri Graham in her individual capacity, challenging the propriety of inmate strip searches at Wayne County Jail Division I in Detroit, Michigan. Plaintiff Sumpter was strip-searched four times during her 34-day incarceration during October and November 2012: three times in the "Registry" area, where inmates are searched when they first

come into Division I and when they return from transfers and court appearances, and once on her housing ward on the fifth floor of the jail.[1]

Wayne County's official policy regarding strip searches of inmates during the relevant time period specified that all searches would be conducted as follows: (1) by a same-gender deputy, (2) outside the view of individuals of the opposite gender, and (3) outside the view of other inmates when possible. Plaintiff Sumpter's complaint against the Registry searches is that she was searched by defendant Graham, a female deputy, at the same time other female inmates were also being searched. On November 22, 2013, Wayne County issued a Divisional Directive for Division I, directing that Registry searches were to be performed on one female inmate at a time. The following additional memorandum was issued December 7, 2013:

> Effective immediately, the strip search of an inmate shall only be conducted in a manner that does not permit any other inmate or person, including a civilian employee, to visually observe the inmate during the entire strip search of an inmate. The directive is applicable to conducting the strip search of an inmate anywhere in the jails and the courts.

In their motion for partial summary judgment, Defendants claim that Graham is entitled to qualified immunity. In the alternative, Defendants argue that Plaintiff cannot demonstrate that Graham violated her Fourth Amendment rights. In addition, Defendants assert that Plaintiff's claims for injunctive and declaratory relief are moot. Finally, Defendants contend that because Plaintiff cannot demonstrate that defendant Wayne County had an unconstitutional policy of exposing female

---

[1] Plaintiff's claim regarding the October 23, 2012 incident on the fifth floor is that although female deputies conducted a search of her cell block, she believes male deputies were in the center duty station (or "bubble")–an enclosed area overlooking the cell block. However, Plaintiff is unable to identify any particular male deputy that may have been present. Indeed, she was not able to state for certain that *any* male deputies observed the search. Instead, she believes that she saw male "silhouettes" and heard male voices coming from the bubble during the cell block strip search.

inmates to male deputies, employees, and inmates and also cannot demonstrate that the policy was the moving force behind her alleged constitutional injury, Plaintiff cannot establish municipal liability against defendants Wayne County and Sheriff Benny Napolean.

## **LAW AND ANALYSIS**

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' . . . 'We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'
>
> 'We have repeatedly told courts . . . not to define clearly established law at a high level of generality.' The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.' This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'

Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citations omitted) (emphasis in original). It is the plaintiff's burden to demonstrate that the right was "clearly established" for the purposes of qualified immunity. See Webb v. United States, 789 F.3d 647, 659 (6th Cir. 2015).

At the time of plaintiff Sumpter's incarceration, October and November 2012, there was no binding case law holding that a same-gender strip search, conducted in the presence of other inmates of the same gender who were also being strip searched, was unconstitutional under the Fourth Amendment. There is no applicable case law that could be extrapolated to place the issue "beyond debate" so that a reasonable official in defendant Graham's situation would have known that her conduct violates the law.

3

Plaintiff relies on Cornwall v. Dahlberg, 963 F.2d 912 (6th Cir. 1992), to show that defendant Graham should have known the strip searches violated Plaintiff's constitutional rights. However, in Dahlberg, the United States Court of Appeals for the Sixth Circuit held that a forced exposure to members of the *opposite sex* was a consideration in determining whether a constitutional violation had occurred. There is nothing in Dalhberg to suggest that at the time of plaintiff Sumpter's incarceration Registry strip searches could not be performed by a deputy of the same gender in the presence of other inmates also of the same gender. Therefore, the court finds that defendant Graham is entitled to qualified immunity.

The court further finds that Plaintiff's claims for injunctive and declaratory relief are moot because she is no longer incarcerated at Wayne County Jail and because defendant Graham has not conducted the Registry searches in the manner alleged by Plaintiff since the end of 2013. The doctrine of mootness bars claims for injunctive and declaratory relief under 42 U.S.C. § 1983 against alleged jail practices once an individual is no longer residing at the offending facility. See e.g. Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

In addition, plaintiff Sumpter cannot establish municipal liability under 42 U.S.C. § 1983. She claims she was "forcibly exposed to a state of undress to male guards, officer, employees, and other male inmates." Am. Compl. at ¶ 13. However, at her deposition, Plaintiff testified there were no male deputies involved in the Registry searches; and the one time she was searched on her housing ward, she believes, although she is not certain, that some male deputies saw her during a strip search.

   Q: How many times were you strip searched on the [housing] ward?
   A: Once.

                              \*   \*   \*

Q: Okay. Let's– let me back up for a minute. When the unit was shook down and the individual cells were searched, were there male deputies and female deputies involved in the search of the cells? Only female deputies, only male deputies, what? What do you remember?

A: Both female and male deputies searched the cells.

\* \* \*

Q: After the cells were searched on five northeast, are you saying that male officers came into the common area and they stood in that same common area during the strip search of female inmates?

A: We have a bubble that the officers stand in that you can directly see through.

\* \* \*

Q: So my question is, then, the male officers, deputies, were not in the common area during the strip search on five northeast; you're saying that they were in the bubble or the duty station, correct?

A: Right.

\* \* \*

Q: Were they facing you?

A: Yes.

Q: Were they looking at you?

A: Yes.

Q: Did they make comments?

A: No.

\* \* \*

Q: Would you know these male deputies if you saw them; would you be able to identify them?

A: No, it has like a –

5

Q: Dark screen on the glass?

A: It's not dark. You can see through it, but it's tint, so . . .

Q: So what, you can't see their fact?

A: No.

Q: But you could see their silhouette?

A: Yes.

Q: How do you know they were male deputies as opposed to female deputies if all you could see is their silhouette?

A: They were converating [sic] inside the bubble, so we heard the voices.

\* \* \*

Q: Now, you talked about this window tint on the glass. You don't know if these officers saw you or not, do you?

A: I seen their bodies facing towards me. I couldn't directly see a visual of their face, but I seen the front of their body facing towards me.

\* \* \*

Q: So my question is: You don't know that they saw you, correct? You're assuming they did, but you don't know that?

A: Correct.

Defs' Ex. 1, pp. 61-62, 68-71, 75.

In order to establish municipal liability, a plaintiff must demonstrate that the policy of the municipality itself caused the constitutional violation at issue. Monell v. Department of Social Servs., 436 U.S. 658 (1978). In this case plaintiff Sumpter believes, but is not certain, that any of the three silhouettes she identified as male officers actually saw her in a state of undress. Even if Plaintiff was searched in the manner alleged in her deposition testimony, a single instance of male

deputies being in the duty station during the search is insufficient to establish that Wayne County had a policy or custom of exposing female inmates in a state of undress to male guards, officers, employees, and other male inmates as alleged in her amended complaint.  Plaintiff has failed to connect the alleged unconstitutional policy to Wayne County to show that her alleged injury was incurred because of that policy.  See Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993).

Because there is no *respondeat superior* liability under Monell, municipal liability cannot be imposed upon the defendant county based upon a single incident of an alleged tortfeasor's conduct. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  Therefore, Defendants are entitled to summary judgment on Plaintiff's municipal liability claims against defendants Wayne County and Sheriff Benny Napolean.

Because the court has determined that defendant Graham is entitled to qualified immunity and that defendants Wayne County and its sheriff are entitled to summary judgment, the court will deny without prejudice Plaintiff's amended motion to certify class.  In addition, the court will deny Plaintiff's motion to strike errata sheet because the March 2, 2016 Graham declaration had no bearing on the court's decisions in this matter.

## ORDER

It is hereby **ORDERED** that Defendants' December 10, 2015 motion for partial summary judgment is **GRANTED.**

It is further **ORDERED** that plaintiff Sumpter's November 5, 2015 amended motion to certify class is **DENIED WITHOUT PREJUDICE.**

It is further **ORDERED** that plaintiff Sumpter's March 4, 2016 motion to strike errata sheet is **DENIED.**

s/John Corbett O'Meara<br>United States District Judge

Date:  June 7, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, June 7, 2016, using the ECF system.

s/William Barkholz<br>Case Manager